UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:08-CV-204-F

| | | |
|---|---|---|
| GREAT DIVIDE INSURANCE COMPANY | ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | ORDER |
| | ) | |
| MIDNIGHT RODEO, INC., and DEBRA D. WILLINGHAM, Administratrix of the Estate of Willie Calvin Zeiter | ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on Plaintiff's Motion for Summary Judgment [DE-20]. Also before the court is Defendant's Motion for Judgment on the Pleadings [DE-22]. Both parties have responded fully to each of these motions and the matter is now ripe for disposition.

### I. Procedural and Factual History

This case arises out of the fatal injuries sustained by the decedent Willie Calvin Zeiter at the hands of employees of Midnight Rodeo on September 30, 2006. On the night of September 30, 2006, Willie Calvin Zeiter ("Zeiter") was a patron at Midnight Rodeo in Morehead City, North Carolina. Compl. [DE-1] ¶ 1. Before the night was over, Zeiter was physically removed from the establishment by bouncers, employees of Midnight Rodeo. *Id.* at ¶ 2, *citing* "Underlying Action" [DE-11] Exh. 4, ¶ 9. Prior to his removal, Zeiter was "physically assaulted" and severely injured by the "excessive force" and "willful and wanton"

conduct of the bouncers inside the establishment. [DE-11] Exh. 4 ¶ 9, 11. Zeiter's injuries were so severe, in fact, that he was pronounced dead at the Carteret General Hospital at 6:38 a.m. on the morning of October 1, 2006. *Id.* at ¶ 21.

On May 23, 2007, Deborah D. Willingham ("Willingham") as the Administratrix of Zeiter's estate, filed a civil complaint ("Initial Action") against Midnight Rodeo, Inc., in Carteret County, North Carolina. Answer [DE-11] Exh. 1. The Initial Action alleged that on the night of October 1, 2006, "bouncers used excessive force against Decedent while in the establishment and while physically removing him from the establishment, causing him severe personal injury" and that "Decedent died on October 2, 2006 . . . as a result of the injuries sustained." *Id.* at ¶¶ 7-8. Subsequently, Willingham voluntarily dismissed the Initial Action in favor of filing a second Complaint ("Underlying Action") against not only Midnight Rodeo, Inc., but also against Brian Lowry, M.D., and Carteret County General Hospital Corporation on February 6, 2008. [DE-11] Exh. 4.

The Underlying Action is a wrongful death suit, also alleging that bouncers "physically assaulted" him and "used excessive force against Willie while in the establishment and while physically removing him from the establishment causing him severe personal injury." *Id.* at ¶ 9, 11. The Underlying action also includes specific causes of action against Midnight Rodeo, titled "Negligence and Negligence Per Se." *Id.* unnumbered p. 6.

On May 2, 2008, Great Divide, the insurance company for Midnight Rodeo, filed the instant action seeking a Declaratory Judgment as to the company's duty to defend Midnight Rodeo in the Underlying Action. Compl. [DE-1]. On July 8, 2008, Midnight Rodeo filed its Answer and Counterclaim against Great Divide [DE-11], asking this court to make a

2

Declaratory Judgment requiring Great Divide to defend Midnight Rodeo against the Underlying Action.

On September 10, 2008, Great Divide filed a Motion for Summary Judgment [DE-20], and on September 30, 2008, Midnight Rodeo filed its own Motion for Judgment on the Pleadings [DE-22]. On the same day, Midnight Rodeo filed its Response [DE-24] to Great Divide's summary judgment motion. Thereafter, on October 10, 2008, Great Divide filed its Reply [DE-25] in further support of its motion for summary judgment and ten days later, filed its Response [DE-26] to Midnight Rodeo's motion for judgment on the pleadings. On November 3, 2008, Midnight Rodeo filed its Reply [DE-27] in further support of its motion for judgment on the pleadings. The following day, all of the motions were submitted to this court for ruling.

## II. **STANDARD**

The Plaintiff in this case has moved for summary judgment, arguing that there are no issues of material fact and that judgment as a matter of law is therefore appropriate. *See* FED. R. CIV. P. 56(c). The party seeking summary judgment bears the burden initially of coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue does indeed exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In doing so, the party opposing summary judgment may not rest upon mere allegations or denials; rather, she must show

3

specific facts showing there is a genuine issue for trial. *See Emmett v. Johnson*, 523 F.3d 291, 297 (4th Cir. 2008); *Anderson*, 377 U.S. at 245-52. Summary judgment is, therefore, appropriate against a party who fails to make a showing sufficient to establish any one of the essential elements of the party's claim on which he will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322-23.

Similarly, the Defendant, Midnight Rodeo has moved for a judgment on the pleadings. A motion for judgment on the pleadings pursuant to Rule 12(c) is intended to test the legal sufficiency of the complaint. In considering such a motion, the court must accept well-pleaded facts as true and draw all factual inferences in favor on the non-moving party. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Judgment on the pleadings should be granted only if it is clear that there is no genuine issue of material fact and that judgment is appropriate as a matter of law.

Because both of these standards are identical in their query and because the court does not find any facts on the record besides those alleged by the pleadings and the attachments thereto, it will dispense with each motion based on the same legal standard. Ultimately, both parties seek judgment as a matter of law and the court will make the ruling required by the pleadings as to whether Great Divide has a duty to defend Midnight Rodeo in the Underlying Action.

### III. ANALYSIS

The Plaintiff, Great Divide, brings this declaratory judgment action pursuant to Rule 57 of the Federal Rules of Civil Procedure and Title 28, United States Code, Section 2201. Great Divide requests a determination as to whether, as the insurer for Midnight Rodeo, it has a duty to defend its insured in the Underlying Action for wrongful death.

In its motion for summary judgment, Great Divide "denies that it has any duty to defend or indemnify Midnight Rodeo in the Underlying Action" and "seeks judgment as a matter of law on the basis of its 'All Assault or Battery Exclusion' and 'Total Liquor Liability Exclusion.'"[1] Pl.'s Mot. Summ. J. p. 1 [DE-20].

Under North Carolina law, courts are to conduct a "comparison test", reading the pleadings side-by-side with the policy, "to determine whether the events as alleged are covered or excluded" and whether an insurance company has a duty to defend the insured. *C.D. Spangler Const. Co. V. Industrial Crankshaft & Engineering*, 326 N.C. 133, 154, 388 S.E. 2d 557, 570 (N.C. 1990). The pertinent portion and exclusions of the disputed insurance policy in the instant case read as follows:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

   **1.**    **Insuring Agreement**

        **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages

        **b.** This insurance applies to "bodily injury" and "property damage" only if:

            (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;[sic]

            (2) The "bodily injury" or "property damage" occurs during the policy period

---

[1] As discussed below, this declaratory judgment action can be determined based on the assault and battery exclusion in the policy and, therefore, the Liquor Liability exclusion is not discussed herein.

5

2. **Exclusions**

   a. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force[2] to protect persons or property.

**LIABILITY ENDORSEMENT**

**ADDITIONAL EXCLUSIONS AND CONDITIONS**

**EXCLUSION - ALL ASSAULT OR BATTERY**

The following exclusion is **added** to Paragraph 2. **Exclusions of SECTION 1 - COVERAGES:**

This insurance does not apply to:

a. "Bodily injury", "property damage" or "personal and advertising injury" arising out of any:

   (1) Alleged Assault or battery; or

   (2) Act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security.

b. Claims, accusations, or charges of negligent hiring, placement, training or supervision arising from actual or alleged assault or battery.

**EXCLUSION – TOTAL LIQUOR LIABILITY EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

---

[2] Nowhere in either the Initial Action or the Underlying Action were the actions of the bouncers at Midnight Rodeo alleged to have been an exercise in "reasonable force." In fact, both complaints alleged the conduct to constitute "excessive force." Initial Action [DE-11] Exh. 1 ¶ 12; Underlying Action [DE-11] Exh. 4 ¶ 9.

6

Exclusion c. under Paragraph 2., Exclusions of Coverage A. Bodily Injury and Property Damage (Section 1 – Coverages) is **replaced** by the following:

c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;
(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages

**EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES**

This insurance does not apply to a claim of or indemnification for punitive or exemplary damages. If a "suit" shall have been brought against you for a claim within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then we will afford a defense for such action. We shall not have an obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

**SECTION V – DEFINITIONS**

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Pl.'s Mot. Sum. J. [DE-20] pp. 2-4.

As pointed out by Midnight Rodeo, in general, the "rules of construction of an insurance policy require that exclusions be interpreted narrowly while coverage clauses must be interpreted broadly to provide the greatest possible protection to the insured." *State Auto Ins. Comps. v. McClamroch*, 129 N.C. App. 214, 218, 497 S.E.2d 439, 442 (N.C. App. 1998) (internal citations omitted). Insurance companies have a duty to defend "when the pleadings state facts demonstrating that the alleged injury is covered by the policy . . .

7

whether or not the insured is ultimately liable." *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). Accordingly, Midnight Rodeo argues that, because the allegations in the complaint are based in negligence and not assault and battery, the exclusions do not apply and Great Divide has a duty to defend. In this vein, Midnight Rodeo asserts that "[a]llegations of negligence do not encompass the intent necessary to assert an assault or battery claim and furthermore, do not trigger the assault and battery exclusion provision in the Policy." Defs.' Mot. in Opp. [DE-24] pp. 7-8.

Conversely, Great Divide points to both the Initial Action and the Underlying Action, and states that, although the actual claims may be termed as "negligence" and "negligence per se", the facts alleged describe intentional acts of assault and battery by Midnight Rodeo employees, and that any claim brought by the decedent's estate accordingly arises therefrom. In the Initial Action, filed May 23, 2007, the Plaintiff alleged that "these bouncers used excessive force against Decedent while in the establishment and while physically removing him from the establishment." Answer [DE-11] Exh. 1, ¶ 7. In that Initial Action, although Plaitniff seeks damages for "negligence and wrongful death," Plaintiff alleged that it was "Defendant's agents and employees through their use of excessive force [who] proximately caused Decedent's injuries which caused his death." *Id.* at ¶ 12.

On February 6, 2008, Plaintiff filed a second Complaint, adding as Defendants the treating hospital of the decedent and treating physician. Therein, Plaintiff again alleged that a number of "[Midnight Rodeo] bouncers used excessive force against Willie while in the establishment while physically removing him from the establishment causing severe personal injury. These actions constitute willful or wanton conduct." Answer [DE-11] Exh.

8

4, ¶ 9. Plaintiff further alleged that "[a]fter multiple bouncers physically assaulted Willie and violently threw him out of the side door of Midnight Rodeo, Willie was transported [to the hospital]." *Id.* at ¶ 11.

Great Divide questions how such acts, deemed "physical assault" by the Decedent's estate, can be considered anything other than intentional conduct. Reply to Mot. Sum. J. [DE-25] p. 3. Several courts analyzing similar exclusionary clauses in insurance policies agree with Great Divide on this question. In *McClamroch,* cited by both parties, the Court of Appeals of North Carolina held that a claim of negligence was undercut where the defendant's repeated intentional acts were "substantially certain to cause injury." *McClamroch,* 129 N.C. App. 214, 219 (1998). Casting or recasting claims as negligence "is not sufficient to trigger coverage" where no new facts are alleged. *Id.* Although Midnight Rodeo claims the acts described by either complaint were not inherently intentional, and that the employees could have been negligent in removing the decedent from the bar, the language of both Complaints state otherwise, that the actions were "physical assault[s]" and constituted "excessive force." As noted by the court in *McClamroch,* "while intent to injure is required, an intent to injure may be inferred where the act is substantially certain to result in injury." *Id.* at 220.

Here, where the facts, as categorized by the Complaints, allege that "multiple bouncers" used "excessive force" against the decedent, who is described as "approximately five feet six inches tall and weighing 140 pounds", to "violently thr[o]w him out of the side door of Midnight Rodeo", the facts point to substantial certainty of a resulting injury. [DE-11] Exh. 1 ¶¶ 9-11. These facts are sufficient to trigger the assault and battery exclusion of

9

the policy, and to excuse Great Divide from a duty to defend based on the actions of the bouncers employed by Midnight Rodeo.

Midnight Rodeo argues further, however, that the plaintiff's allegation in the Underlying Action that "Midnight failed to instruct its bouncers on the proper amount of force to use when dealing with patrons", also is based in negligence, and requires Great Divide to defend the claim. [DE-11] Exh. 1 ¶ 59. Again, Midnight Rodeo contends that because the Plaintiff lists her causes of action as "negligence" and "negligence per se" . . . . the portion of the assault and battery exclusion related to the failure to provide adequate security and providing negligent supervision is not applicable." Def. Mem. in Opp. [DE-24], p. 14.

Therefore it appears that, although Midnight Rodeo has argued that the bouncers own actions were not inherently intentional, the Defendant now attempts to separate the actions of the bouncers from the negligence of the bar owners. Given the plain language of the insurance policy and the allegations in the Underlying Action, however, this separation is not possible as the allegations of physical assault and negligence are inextricably intertwined. As set forth in the policy and recounted herein, the plain language of the exclusion explains that any injury *arising out of* any assault and battery *or* any act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security is not covered by the policy provided by Great Divide. Pl.'s Mot. Sum. J. [DE-20] p. 3(emphasis added). In another subsection, the policy states that the insurance also does not apply to cover claims, accusations, or charges of negligent hiring, placement, training or supervision arising from actual or alleged assault or battery.

Although there are no cases applying North Carolina law that are directly on point with the facts of this case, many other jurisdictions have alleviated an insurer's duty to defend when an assault or battery exclusion exists, and the plaintiff's claims of negligence would not arise but for the underlying assault and battery. *See, e.g., United Nat'l Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 353 (2nd Cir. 1993); *United Nat'l Ins. Co. v. Entertainment Group, Inc.*, 945 F.2d 210, 212 (7th Cir. 1991). In other words, when injuries arise from assault and battery of an individual, whether at the direction or omission of the insured, those claims are excludable from coverage because those injuries, and not the negligence of the insured, gave rise to the suit.

Specifically, this court is persuaded by the analysis provided by the district court in *Sauter v. Ross Restaurants, Inc.*, 1981 U.S. Dist. Lexis 18448 (Pa. May 21, 1981). With facts very similar to those in the instant case, the *Sauter* court explained:

> It is undoubtedly true that for plaintiffs to recover in this suit, they must demonstrate that their injuries were caused by the allegedly negligent acts. But, although the injuries must, in this sense, have been caused by Ross' negligent acts, it does not follow that these same injuries did not "aris[e] out of assault and battery." Plaintiffs' real contention is that their injuries arose out of an assault and battery which, in its turn, arose out of Ross' negligence. Thus, plaintiffs' injuries are unambiguously excluded from coverage by the assault and battery exclusion.

*St. Paul Surplus Lines Ins. Co. v. 1401 Dixon's, Inc.*, 582 F.Supp 865, 867-68 (E.D. Pa. 1984) (citing *Sauter* at *6-7)

Accordingly, where the face of the Underlying Action describes a "physical assault" at the hands of agents or employees of the bar, the insurer incurs no duty to defend because the suit arises ultimately from that assault and battery. *United Nat'l Co. v. The Tunnel*, 945 F.2d at 354 (no duty to defend where the bar claimed that the bouncer's obvious assault was not intentional as there is no such claim as negligent assault and battery); *United Nat'l Ins.*

11

*v. Entertainment Group, Inc.*, 945 F.2d 214 (no duty to defend where, "notwithstanding the negligent allegations, coverage would still be excluded because the assault and battery was the immediate cause of the injury that gave rise to the suit."). This court also is persuaded that, but for the assault and battery described by the Underlying Action, none of the instant claims would exist, and, therefore, no duty to defend by Great Divide has been invoked by the claims of the decedent's estate.

As to the claims in the Underlying Action that Midnight Rodeo's failure to "instruct its bouncers on the proper amount of force to use when dealing with patrons" and failure "to conduct proper and complete background checks of its employees", the court interprets these as allegations of negligent training and/or hiring. [DE-11] ¶¶ 59, 65. The explicit language of the policy at issue in this case states that Great Divide will not defend against "Claims, accusations, or charges of negligent hiring, placement, training or supervision arising from actual or alleged assault or battery." Pl.'s Mot. Sum. J. [DE-20] p 3. Similarly, in *United Nat' v. The Tunnel*, the court noted the insurer had no duty to defend the claim of "negligent hiring" where such a claim was expressly excluded from coverage by the language of the policy. 988 F.2d 354 n. 1.

Therefore, where the complaint alleges that the bouncers conduct amounted to a "physical assault", and there is no question that each of the plaintiff's claims arise out of that physical assault, including the claims for negligent hiring, supervision or training of the assaulting bouncers, Great Divide has no duty to defend Midnight Rodeo in the Underlying Action as a matter of law. *See St. Paul Surplus Lines Ins. Co. v. Dixon's, Inc.*, 582 F.Supp 865, 867 (E.D. Pa. 1984) ("The mere fact that [the bar] may have been

12

negligent in allowing the assault and battery to occur does not avoid the effect of the [assault and battery] exclusion.")[3]

## IV. CONCLUSION

For the reasons stated herein, the Motion for Summary Judgment [DE-20] hereby is ALLOWED. The Motion for Judgment on the Pleadings by Midnight Rodeo [DE-22] is DENIED. The most recent filing by Great Divide for leave to file and Amended Complaint is DENIED as MOOT [DE-28]. The Clerk of Court is directed to close this case.

SO ORDERED.

This the 24th day of May, 2010.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge

---

[3] The court also notes that, in *St. Paul*, the district court interpreted an identical exlusionary clause as the one present in this case to apply "not only to the intentional tort of assault and battery, but also to negligence in failing to stop or prevent its occurrence." *Id.* at 868. This analysis comports with the language of the all assault and battery clause which states any injury "arising out of" will not be defended.

13